UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| NEAL WEARNER, *ex rel.* BRITTNEY WEARNER, | ) ) ) |
| *Plaintiff*, | ) ) No. 1:18-cv-28-CLC-SKL |
| v. | ) ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) |
| *Defendant*. | ) ) |

# REPORT AND RECOMMENDATION

Brittney Wearner ("Plaintiff"),[1] brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her childhood disability insurance benefits ("CDIB") and supplemental security income ("SSI"). Each party moved for summary judgment [Docs. 16 & 26] with supporting briefs [Docs. 17 & 27]. Plaintiff also filed a response to the Commissioner's motion [Doc. 29]. This matter is now ripe, and for the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment be **GRANTED**; (2) the Commissioner's motion for summary judgment be **DENIED**; and (3) the decision of the Commissioner be **REVERSED AND REMANDED** for further proceedings.

---

[1] This action was originally filed by Brittney Wearner, but she passed away during its pendency [Doc. 30]. Following her death, Dr. Neal Wearner, Brittney's father, filed a motion to be substituted as the plaintiff in this action, which the Court granted [Doc. 35]. For simplicity's sake, the Court will refer to the arguments and filings addressed herein as having been made by Brittney as Plaintiff.

## I. ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 9 ("Tr.")], Plaintiff filed an application for CDIB and SSI in October 2014, alleging disability beginning December 1, 2009. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held in Chattanooga, Tennessee, on October 27, 2016. Plaintiff was represented by counsel at the hearing. On February 15, 2017, the ALJ issued an unfavorable decision, finding Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date through the date of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born on November 10, 1988, making her 21 years old on the alleged onset date, which is defined as a "younger person" under Social Security Administration ("SSA") regulations. 20 C.F.R. §§ 404.1563 & 416.963. She had at least a high school education and was able to communicate in English. She worked at various retail positions, but never at the level of substantial gainful activity.

### B. Medical Records

In her disability report, Plaintiff alleged she was disabled due to "Many diseases to list and mental illnesses." (Tr. 239). Plaintiff [Doc. 17 at Page ID # 1639-54], and the Commissioner [Doc. 27 at Page ID # 1711-19], each provide a detailed, factual recitation of Plaintiff's medical record. The relevant records have been reviewed, and are discussed as necessary below.

2

### C. Hearing Testimony

At the hearing before the ALJ on October 27, 2016, Plaintiff and a vocational expert ("VE") testified. The Court has carefully reviewed the transcript of the testimony from the hearing (Tr. 36-69).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The SSA determines eligibility for disability benefits by following a five-step process. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.[2]

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.  The ALJ's Findings**

First, the ALJ determined Plaintiff had not yet turned 22 as of the alleged onset date, December 1, 2009. At step one of the process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found Plaintiff had medically determinable impairments of chronic liver disease, status post liver transplant as a child; type I diabetes mellitus, insulin dependent; gastroparesis; and bipolar disorder. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or

---

[2] Plaintiff was over the age of 18 when she applied for CDIB and SSI. She applied based on the earnings record of her father, Dr. Wearner. A person can be entitled to CDIB based on the earnings records of their parent, even if they are 18 or older when they apply, provided they can prove their disability began before age 22 (and they meet other requirements). 20 C.F.R. § 404.350(a); *see also Bowes v. Comm'r of Soc. Sec.*, No. 6:18-cv-349-Orl-37TBS, 2018 WL 7020191, at *2-4 (Dec. 27, 2018) (explaining different standard for CDIB applicants based on whether they are 18 years old at the time of application). Such applications are considered under this same five-step sequential evaluation as used for wage earners. 20 C.F.R. § 404.1505(a).

4

medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next the ALJ found Plaintiff had the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b): except the claimant must avoid concentrated exposure to extreme heat or cold, and hazards such as unprotected heights and dangerous machinery. Mentally, the claimant has the ability to understand and remember simple and detailed, but not complex or executive tasks and instructions. The claimant also has the ability to focus, attend to and concentrate on those tasks for a normal workday/week without unusual distraction or need for special supervision or considerations. Furthermore, the claimant has the ability to establish and maintain appropriate relationships, but is limited to infrequent interaction with peers and supervisors. Finally, the claimant can sustain occasional interaction with the general public, adapt to routine, but not frequent or intense workplace stress changes, travel independently, avoid normal hazards, and set and carry out realistic goals.

(Tr. 24). At step four, the ALJ found Plaintiff did not have any past relevant work. At step five, the ALJ found Plaintiff was able to perform work existing in significant numbers in the national economy, including as a mail sorter, routing clerk, or inspector (Tr. 29). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act from the alleged onset date through the date of the ALJ's decision.

## IV.   ANALYSIS

Plaintiff asserts this matter should be reversed and remanded under sentence four because substantial evidence does not support the ALJ's decision. Specifically, she argues: (A) "The record supports an inability to attend reliably 8 hours per day 5 days per week at competitive work." (B) "The discounting of treating opinions requested by the ALJ is for insubstantial reasons." (C) "When an ALJ arbitrarily and erroneously defines the term 'infrequent' to mean 'within the range of frequent,' a term defined by the regulation, it causes the decision to fail under

5

Case 1:18-cv-00028-CLC-SKL   Document 36   Filed 04/15/19   Page 5 of 20   PageID #: 1760

the substantial evidence test." [Doc. 17 at Page ID # 1638]. Plaintiff also argues her due process rights were violated because the ALJ asked "for specific proof to be developed post hearing while indicating that with such proof he would support disability or 'at worst' holding another hearing with a medical expert witness," and Plaintiff provided the proof but the ALJ denied her claim without "any added notice or opportunity to be heard." [*Id.* at Page ID # 1638-39].

As explained in greater detail below, after very careful consideration, I **FIND** the ALJ's decision to assign little to no weight to Plaintiff's treating physician's opinion regarding absenteeism is not supported by substantial evidence in the sense that the decision is not adequately explained, and the reasons that are given are not supported by substantial evidence. I **FIND** this error is harmful because if the opinion was given more weight, Plaintiff would have been precluded from competitive work according to the testimony of the VE. My determination is based primarily on evidence dated after Plaintiff turned 22, and therefore bears more directly on Plaintiff's application for SSI than on her application for CDIB.[3] Nevertheless, on remand, the Commissioner should be instructed to reconsider Plaintiff's CDIB application as well as her SSI application once Dr. Yates' opinion is properly weighed.

Because I **RECOMMEND** remand for further proceedings on this basis, Plaintiff's due process issues are **MOOT**, and I do not address them further. I will, however, briefly address the other issues Plaintiff raises.

---

[3] Plaintiff turned 22 on November 10, 2010, applied for SSI on October 20, 2014. As discussed above, to qualify for CDIB, a claimant in Plaintiff's shoes must establish they became disabled before turning 22. In evaluating an SSI claim, on the other hand, the SSA develops a claimant's medical history "for at least the 12 months preceding the month in which" the claimant files their application, "unless there is a reason to believe that development of an earlier period is necessary . . . ." 20 C.F.R. § 416.912. The Commissioner's suggestion that the only evidence relevant to Plaintiff's SSI claim is that which post-dates Plaintiff's *application* is therefore incorrect [Doc. 27 at Page ID # 1711]. The application date may start the clock for SSI benefits, 20 C.F.R. § 416.330, but earlier evidence is still relevant to the disability determination.

6

### A. Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, No. 17-1184, 587 U.S. __, 2019 WL 1428885, at *3 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into

account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

## B. The ALJ's treatment of Dr. Yates' opinion concerning Plaintiff's absenteeism requires remand.

In considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). A medical opinion from a treating source must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.[4] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); 20 C.F.R. § 404.1527. While treating physicians' opinions are often afforded greater weight than those of examining physicians, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993)); *see also Gayheart*, 710 F.3d at 376 (noting that "two conditions" must be met for treating physician to automatically receive controlling weight (citing 20 C.F.R. § 404.1527(c)(2))).

When an ALJ "give[s] a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent

---

[4] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See* 20 C.F.R. §§ 404.1527; 416.927. The current versions of 20 C.F.R. § 404.1527 and § 416.927 differ from the version in effect at the time of the ALJ's determination; however, the differences are not substantive and do not impact my report and recommendation. I cite to the current version herein.

9

reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr*, 616 F. App's at 211 (citations omitted). The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376 (citation omitted). If a treating-source opinion is not given controlling weight, the ALJ must weigh the opinion based on all relevant factors, including the nature and length of the treatment relationship, the specialization of the medical source, the consistency and supportability of the opinion, and other factors. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ is not, however, required to engage in a protracted discussion of the reasons. *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider," and satisfied good reasons requirement. (citations omitted)).

Plaintiff's treating general physician, Mumford Yates, M.D., completed a "Medical Assessment of Ability" for Plaintiff on November 14, 2016. The assessment form asks Dr. Yates to "explain the medical reasons for absences" from work, and Dr. Yates responded:

> Brittney has multiple diagnoses of: autoimmune hepatitis (which resulted in a liver transplant at a very young age, 1997), Diabetes type 1 (insulin dependent), gastroparesis, and Bipolar Disorder. She is currently taking: insulin, anti-rejection meds, and depression medication. She is chronically immunosuppressed due to her anti-rejection medications and very susceptible to infections and viruses which can cause days and weeks of debilitating symptoms. Sickness for her would cause hospitalization and in turn make her incapable of being consistent and dependable with job attendance. The diagnosis of gastroparesis can periodically cause flares of nausea and vomiting with abdominal pain to the point of hospitalization for rehydration and symptom control.

(Tr. 1546). Dr. Yates opined Plaintiff would miss an average of more than four days of work per month, and that her "impairments will result in hospitalization." He wrote, "I believe Britt[ney] desires to be gainfully employed and has strived to hold down employment, but, unfortunately her health will not allow her to hold down part-time or full-time employment." Finally, he concluded

10

Case 1:18-cv-00028-CLC-SKL   Document 36   Filed 04/15/19   Page 10 of 20
PageID #: 1765

her impairments would have had the same effect prior to November 10, 2010, when Plaintiff turned 22 (Tr. 1546-47).

Regarding Dr. Yates' opinion, the ALJ wrote:

> I have not given much weight to Dr. Yate's [sic] estimate of the claimant's future absences from work because it is not based on any historical information about actual work attempts and it is nothing other than a guess as to future events. I also note and gave little weight to Dr. Yate's [sic] conclusory opinion that the claimant is unable to sustain any work activity because this opinion is beyond the scope of a proper medical opinion. These opinions on employability are more properly the province of the vocational expert, and while a medical professional's conclusions may be sound, in our system of review they are entitled to no more weight than would be given to a vocational expert's medical diagnosis. Likewise, the question of a claimant's disability is a question reserved for the Commissioner, and medical opinions on such matters are merely some of the evidence to be considered before that determination is made. Furthermore, Dr. Yates based his opinion on the claimant's medical history, which I find inconsistent with his assessment that the claimant cannot sustain substantial gainful activity due to the possibility of multiple hospitalizations due to possible infections, which is not supported by the medical evidence and is inconsistent with the claimant's admissions as to activities of daily living (Exhibits 3E and 7E, 7F, 10F-12F, 25F-26F, and 29F).

(Tr. 27).

Dr. Yates' opinion that Plaintiff's "health will not allow her to hold down part-time or full-time employment," is a question reserved to the Commissioner and therefore is not entitled to any special deference. *See* 20 C.F.R. §§ 404.1527(d); 416.927(d). Nevertheless, there is no question Dr. Yates' description of Plaintiff's conditions and medication regimen are well-supported and not inconsistent with medical and other evidence in the record. The only issues in dispute concern Dr. Yates' opinion about how those conditions would affect Plaintiff's ability to attend work. Given the chronic nature of Plaintiff's conditions, and Dr. Yates' lengthy and regular treatment relationship with Plaintiff, I **FIND** this opinion should be treated as a medical opinion entitled to

11

deference under the treating physician rule, rather than as a vocational opinion reserved to the Commissioner. *See Sharp v. Barnhart*, 152 F. App'x 503 (6th Cir. 2005) (holding long-term doctor's opinion regarding absenteeism caused by the claimant's chronic and episodic disease was a medical question, not a question for the commissioner). Even if it directly bears on Plaintiff's ability to work, it still flows from Dr. Yates' medical knowledge of Plaintiff's conditions, the symptoms they produce, and the treatment they require.

Dr. Yates' opinion focuses on the fact that Plaintiff's weakened immune system means she is more susceptible to serious infections that, unlike for most people, can require hospitalization. In fact, Plaintiff was hospitalized at least four times between May 2014 and January 2015. She was hospitalized from May 1-4, 2014, after presenting at the emergency room with complaints of severe abdominal pain and vomiting (Tr. 1172, 1180-81). It appears she was readmitted on May 5 for further testing (Tr. 797). She was hospitalized again from November 14-17, 2014, for vomiting, diarrhea, and dehydration associated with her gastroparesis, and a urinary tract infection (Tr. 1224, 1159). She was hospitalized again from December 3-7, 2014, due to an "acute kidney injury," and "acute diarrhea" (Tr. 1194). An examining doctor noted the injury was "likely prerenal in the setting of significant gastrointestinal loss over the last 2 weeks" (Tr. 1195). She was hospitalized again for "over 24 hours" on January 17, 2015, for dehydration after "developing a fever with nausea and vomiting." (Tr. 1274-75). The ALJ failed to mention *any* of these hospitalizations, all of which are consistent with Dr. Yates' opinion, particularly his opinion that Plaintiff's gastroparesis "can periodically cause flares of nausea and vomiting with abdominal pain to the point of hospitalization for rehydration and symptom control." (Tr. 1546).

In addition to multi-day hospital admissions, Plaintiff was also sedated several different times for what appear to be outpatient procedures related to her liver. These include a liver biopsy

12

in August 2014 (Tr. 1078 (surgical pathology report)); an ERCP procedure on March 27, 2015 (Tr. 1295 ("Sedation Administered by an Anesthesia Professional")); another ERCP with stent removal on June 26, 2015 (Tr. 1573-74 (same)); and another liver biopsy on December 2, 2015 (Tr. 1560-61 (describing sedation medication used)). The ALJ only mentions the August 2014 liver biopsy (Tr. 26). Moreover, in between these sedated procedures/hospitalizations, Plaintiff attended numerous medical appointments, including mandatory lab work related to her liver and what appears to be at least bi-monthly mental health appointments, as described in Plaintiff's brief [Doc. 17 at Page ID # 1647-54]. The ALJ determined Plaintiff's bipolar disorder and chronic liver disease were severe impairments; and the Commissioner does not argue any of Plaintiff's medical appointments related to these impairments were unnecessary. Accordingly, Plaintiff's absenteeism is clearly a relevant factor in her disability application. *See Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45-SKL, 2018 WL 1952529, at *9 (E.D. Tenn. Apr. 25, 2018) (citing *Griffin v. Comm'r of Soc. Sec.*, No. 2:15-CV-13715, 2017 WL 991006, at *2 (E.D. Mich. Mar. 15, 2017)) (other citations omitted).

The ALJ is not required to specifically address every piece of evidence in the record in the written opinion, of course. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (citations omitted). But the ALJ is required to "consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky*, 167 at 507-08). With little to no discussion of Plaintiff's hospitalizations or outpatient procedures, and no analysis of the significance of Plaintiff's frequent medical appointments, the ALJ's decision does not reflect he met these requirements when weighing Dr. Yates' opinion. *See, e.g.*, *Bensett v. Comm'r of Soc. Sec.*, No. 2:16-cv-11772, 2017 WL 3836098, at *4 (E.D. Mich. Aug. 3, 2017) (concluding the ALJ "failed to properly consider the impact of

13

[the plaintiff's] frequent hospital visits and possible mental impairments on her ability to engage in competitive employment" and recommending remand), report and recommendation adopted, No. 16-11772, 2017 WL 3779996 (E.D. Mich. Aug. 30, 2017).

Plaintiff did attest to a wide range of activities of daily living, including reading, various crafts, caring for her cats (with help), running errands with her mother, and spending time with her boyfriend and her family, as the ALJ emphasized (*see, e.g.*, Tr. 1265). In 2010, Plaintiff even attended cosmetology school classes from 4 p.m. to 10 p.m. (Tr. 1147). But none of these activities demand consistent attendance the way a full-time job does. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (RFC reflects a claimant's ability to perform "sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule."). Also, Dr. Gurcharan Singh, the State Agency non-examining medical consultant whose opinion the ALJ relied on heavily, did not offer an opinion about absenteeism caused by Plaintiff's conditions (Tr. 134-38). While Dr. Singh's opinion that Plaintiff is capable of a reduced range of light work certainly implies he believed absenteeism was not an issue, there is no suggestion he actually considered the absenteeism issue and how it might impact his RFC determination. He also did not have the benefit of Dr. Yates' opinion.

Even if the ALJ was correct that Dr. Yates' opinion concerning Plaintiff's absenteeism should not be entitled to controlling weight, I **FIND** the ALJ's reasons for assigning the opinion "not much" weight are not supported by substantial evidence. The only reason not yet addressed herein is the ALJ's belief that Dr. Yates' opinion "is not based on any historical information about actual work attempts and it is nothing other than a guess as to future events." (Tr. 26). I **FIND** this reason is not supported by substantial evidence. First, Plaintiff in fact did testify she has tried to

14

work in the past, but failed because her health problems interfered with her ability to "maintain attendance." (Tr. 48). She was unable to continue cosmetology school for the same reasons (Tr. 48). Second, and more importantly, Dr. Yates' "guess as to future events" is based on his knowledge of Plaintiff's complicated health problems and his familiarity with the regular treatment and testing those problems require, plus the unpredictable ways Plaintiff responds to infections and flare ups. Hospitalizations and outpatient procedures involving sedation cause employees to miss work. Frequent, medically necessary medical appointments tend to do the same. The ALJ's decision does not reflect that he considered these issues when weighing Dr. Yates' opinion.

I **FIND** this error to be harmful. The VE testified, "Generally, if a person consistently misses more than one day per month, they would have difficulty sustaining employment or if they were regularly leaving their work . . . ." (Tr. 55). Accordingly, even if the ALJ only partially credited Dr. Yates' opinion and found Plaintiff would miss two days of work per month, Plaintiff may have been found disabled and awarded benefits.

Without a further, well-reasoned, well-supported explanation of his rejection of Dr. Yates' opinion, the Court cannot determine if the ALJ properly considered all the evidence before him, including Plaintiff's hospitalizations, sedated outpatient procedures, and frequent medical appointments. I do not find, however, that "all essential factual issues have been resolved" or that Plaintiff has demonstrated she is entitled to benefits. *Faucher v. Sec's of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (further holding a "judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking") (citations omitted). As mentioned, Plaintiff engaged in a wide variety of activities of daily living. Moreover, as the ALJ did mention, more recent records from the Vanderbilt Transplant Clinic revealed some normal exam findings. Accordingly, I **FIND** this

15

Case 1:18-cv-00028-CLC-SKL   Document 36   Filed 04/15/19   Page 15 of 20
PageID #: 1770

matter should be remanded for further proceedings, and Dr. Yates' opinion re-evaluated considering the issues discussed herein, both with respect to Plaintiff's CDIB claim and her SSI claim.

Because I find this matter should be remanded for further proceedings on this issue, I also **FIND** Plaintiff's due process arguments concerning a second administrative hearing (Plaintiff's Issue 2, A.) are **MOOT**.

### C. Dr. Huffman's opinion.

David M. Huffman, M.D., was Plaintiff's treating endocrinologist. Plaintiff submitted a letter from Dr. Huffman dated November 14, 2016 (Tr. 1548). The letter provides Plaintiff began experiencing glucose instability after her liver transplant in 1997, which developed into full-blown type 1 diabetes by 2005. He writes that her diabetes was complicated by "polyneuropathy, intermittent hypertension, proteinuria with infections, and chronic poor blood glucose control," and that "[b]ecause of these medical problems and complications," Plaintiff "has not been capable of maintaining a consistent work schedule or consistent work output during the past 6 years." (Tr. 1548). The ALJ assigned Dr. Huffman's opinion little weight for the same reasons as he did for Dr. Yates' (Tr. 27). Unlike Dr. Yates' opinion, Dr. Huffman's opinion does veer into vocational opinion territory. Dr. Huffman presumably is not familiar with how the SSA defines a "consistent work schedule" or whether "consistent work output" is a requirement of any particular job Plaintiff might be capable of performing. This is different from opining on the number of a days per month a patient would be too incapacitated or occupied with treatment to get to work.

The ALJ also mentioned Plaintiff's "use of immunosuppressive medications" when discounting Dr. Huffman's opinion. Plaintiff takes great umbrage with this reference [Doc. 17 at Page ID # 1658]. However, it is clear the ALJ was referring to Plaintiff's failure to consistently

16

Case 1:18-cv-00028-CLC-SKL    Document 36    Filed 04/15/19    Page 16 of 20
PageID #: 1771

take her prednisone, which the record reflects did affect Plaintiff's ability to stabilize her diabetes (Tr. 1123, 1271). The Commissioner cites several instances in the record showing Plaintiff's failure to take her prednisone properly, although two of these instances occurred when Plaintiff was hospitalized and not given her medication (Tr. 1227, 1275).

For these reasons, I **FIND** no error with the ALJ's decision to assign little weight to Dr. Huffman's opinion. Nevertheless, on remand the Commissioner/ALJ should be required to reevaluate Dr. Huffman's opinion in light of any changes to the weight assigned to Dr. Yates' opinion.

### D. Dr. Holland's opinion

In Issue 1, A., Plaintiff briefly argues the RFC assessment is not supported by substantial evidence because the ALJ did not properly consider the medical opinions [Doc. 17 at Page ID # 1657]. I have already addressed the treating physicians' opinions. The record also contains an opinion from William Holland, M.D., who performed a one-time consultative examination on May 12, 2009 (Tr. 674-76).

Dr. Holland's assessment provides:

> Based on today's examination, I would estimate [Plaintiff] could work six to eight hours of an eight-hour workday but would need to be seated about 20 minutes out of each hour. She could stand or walk for the remainder of the hour. She could lift, push, or pull 10 to 20 pounds on a frequent basis and up to 30 pounds occasionally.

(Tr. 676).

The ALJ assigned "some weight" to Dr. Holland's opinion, discounting it because it was based on a single exam performed prior to Plaintiff's alleged onset date, and because Dr. Holland did not have the benefit of Plaintiff's subsequent medical records (Tr. 25).

Dr. Holland's RFC describes greater capacity than the ALJ found; why Plaintiff would

17

want it to be given more weight is a mystery at first glance. Nevertheless, to make the opinion help her cause, Plaintiff interprets Dr. Holland's "six to eight hours" statement as indicating he believed she "could not reliably make it full 8 hour days." [Doc. 17 at Page ID # 1657]. Plaintiff's creative interpretation is inapposite. Dr. Holland did not opine that Plaintiff could not reliably work an eight-hour day. He opined she could work anywhere from six to eight hours per day. True, six hours per day, five days per week is not consistent with the requirements of competitive work, but eight hours is. And an RFC is the most an individual can, not the least. *See* 20 C.F.R. § 404.1545(a)(1).

Plaintiff does not allege any other errors with the ALJ's assessment of Dr. Holland's opinion, and I **FIND** there are none. Nevertheless, I **FIND** Plaintiff's RFC may well have to be reassessed once Dr. Yates' opinion is properly considered.

### E. The ALJ's definition of "infrequent" as meaning 50% of a workday

At the administrative hearing, the ALJ posed a hypothetical to the VE which included a limitation of "infrequent" interactions with coworkers/peers and supervisors. This limitation comes from the opinion of Maurice Prout, PhD., the state agency non-examining psychological consultant who evaluated Plaintiff's claim in July 2015 (Tr. 139). The ALJ noted the term "infrequent" is not defined in the SSA regulations, but found it is "commonly used," and defined it himself as "about 50% of the day." (Tr. 50). The VE testified there were jobs available with the 50% limitation (and Plaintiff's other limitations), and the ALJ incorporated this limitation into Plaintiff's final RFC assessment.

SSR 83-10 defines "frequent" as "occurring from one-third to two-thirds of the time." 1983 WL 31251, at *6 (1983). It defines "occasionally" as "occurring from very little up to one-third of the time." *Id.* at *5. As a result, the ALJ's definition of "infrequently" falls in the range of

18

"frequently," set by the SSA, which Plaintiff contends is error. Relying primarily on dictionary definitions, Plaintiff argues "infrequent" can only be defined as less than occasional, or "less than once per shift," which would greatly reduce if not eliminate the number of jobs available according to the VE [Doc. 17 at Page ID # 1659]. I respectfully disagree.

It is the ALJ's role to develop the RFC based on all of the evidence in the record. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Dr. Prout did not define the term "infrequent" when giving his opinion, so it was the ALJ's duty as the finder of fact to interpret it and consider it along with any other relevant evidence concerning Plaintiff's ability to interact with her coworkers and supervisors. It is obvious from Dr. Prout's opinion that he intended "infrequent" to mean more than "occasional": Dr. Prout found Plaintiff was "*moderately* limited" in her "ability to interact appropriately with the general public," and therefore she could not perform more than "*occasional* general public interaction." (Tr. 138-39 (emphasis added)). By contract, he found she was "*not significantly* limited" in all areas concerning her interactions with coworkers, peers, and supervisors, and therefore concluded she could have "*infrequent* interaction w/peers and supervisors." (Tr. 139 (emphasis added)). The other non-examining state agency consultant made the same findings (Tr. 81).

The ALJ offered a clear definition of the term on the record when posing his hypothetical question to the vocational expert, one that is consistent with the state agency consultant's use of the term. Regardless of the dictionary or other definition of the term "infrequent," the ALJ interpreted the term to mean less than frequent, but more than occasional. I find that the ALJ's definition of "infrequent" is not arbitrary, nor did the ALJ "elbow out legally defined terms." [Doc. 29 at Page ID # 1741]. *See Mitchell v. Berryhill*, No. 1:15-cv-168-CHS, 2017 WL 886494, at *5 (E.D. Tenn. Mar. 6, 2017) (rejecting similar argument about the definition of "infrequent").

19

Moreover, the ALJ is only required to incorporate the limitations he finds credible into his hypothetical to the VE and in the RFC. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citation omitted).

Accordingly, I **FIND** Plaintiff's arguments concerning the definition of "infrequent" to be not-well taken. I nevertheless **RECOMMEND** remand for the other reasons discussed herein.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **FIND** the ALJ erred in weighing Dr. Yates' opinion, and that this error is harmful and requires further proceedings. I **FIND** Plaintiff's other arguments are either without merit or moot. Plaintiff does not seek a judicial award of benefits, and I **FIND** she is not entitled to one. Accordingly, I **RECOMMEND**[5] that:

1) Plaintiff's motion for summary judgment [Doc. 16] be **GRANTED**;

2) The Commissioner's motion for summary judgment [Doc. 26] be **DENIED**; and

3) The Commissioner's decision denying benefits be **REVERSED AND REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

                                                       s/ *Susan K. Lee*
                                                       SUSAN K. LEE
                                                       UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).